J. L. FREEMAN, INCOMPETENT, BY HIS GUARDIAN *v.* CARMIE F. FREEMAN ET UX

5-5612                                              467 S. W. 2d 703

Opinion delivered June 14, 1971

*William H. Arnold,* for appellant.

*James C. Cole,* for appellees.

GEORGE ROSE SMITH, Justice. The appellant J. L. Freeman, now an incompetent person acting through his guardian, brought this suit to cancel a deed by which Freeman and his wife, who died before the suit was filed, purportedly conveyed a farm to their son, the appellee

---

Carmie F. Freeman. The complaint asserted that the signatures of both grantors were forgeries. The chancellor found Mrs. Freeman's signature to be a forgery, but he found Freeman's signature to be genuine. The correctness of the latter finding is the main issue now before us.

Trying the case *de novo*, we cannot say that the decree is against the weight of the evidence. It was rather natural for Carmie's parents to convey the farm to him. He returned from military service in 1947 and thereafter lived on the property with his parents and with his own family. He farmed the land in partnership with his father. The elder Freeman was too old to farm the property actively when he and his wife first conveyed the land to Carmie on November 14, 1966. The validity of that deed is not questioned.

On August 19, 1968, the older couple conveyed the rest of their real property to their other two children. Those two children then learned for the first time about the earlier deed to Carmie. A family dispute arose, but it ended when Carmie and his wife voluntarily conveyed the farm back to Carmie's parents on September 4, 1968. Only twenty-two days later, however, the elder Freemans ostensibly again deeded the farm to Carmie and his wife. That is the deed now challenged as a forgery.

A handwriting expert testified for the plaintiff that both the grantors' signatures were forgeries. It was that witness's opinion that Mrs. Freeman's signature was a traced forgery while that of her husband was a simulated forgery.

There is cogent proof to the contrary. As we have said, the parents' conveyance of the farm to the son who had lived and worked with them for almost twenty years was a natural disposition of the property. Carmie testified that his parents signed the deed now in controversy. J. E. Still, the attorney who prepared the deed and took the acknowledgment, testified positively that Freeman signed the instrument in his presence, though Still was not equally certain about Mrs. Freeman's signature. The

deed was kept in a lock box to which the elder Freeman had access—hardly a likely place for Carmie to keep a forged instrument. Upon the record as a whole we do not find the preponderance of the evidence to be contrary to the chancellor's conclusion that Freeman's signature was genuine.

That conclusion also disposes of the appellant's remaining contentions. It is argued that since a quitclaim deed does not convey an after-acquired title, Freeman's deed as a tenant by the entirety did not convey any interest passing to Freeman upon his wife's subsequent death. That argument is unsound. A deed executed by the husband alone carries his survivorship interest as a present estate, so that the entire title vests in the grantee if the husband does survive the wife. "The alienation by the husband of a moiety will not defeat the wife's title to that moiety if she survive him; but, if he survive, the conveyance becomes as effective to pass the whole estate as it would had he been sole seized at the time of the conveyance." *Davies* v. *Johnson*, 124 Ark. 390, 187 S. W. 323 (1916).

It is also argued that the deed was invalid if Mrs. Freeman's signature was forged, because a conveyance of the homestead by the husband alone is void. *Hall* v. *Mitchell*, 175 Ark. 641, 1 S. W. 2d 59 (1927). No such contention was made in the plaintiff's complaint. Moreover, the Freemans relinquished their homestead right by their valid deed to Carmie in 1966, and there is no showing that they occupied the land or otherwise reestablished a homestead right during their twenty-two days of ownership in 1968.

Affirmed.